# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:06cv93

| | |
|---|---|
| THE ESTATE OF ALEXANDER MICHAEL BUCKWELL, BY THE CO-ADMINISTRATORS OF HIS ESTATE, ANDREW ASHLEY BUCKWELL AND SAMANTHA SMITH BUCKWELL, <br><br> Plaintiffs, <br><br> Vs. <br><br> BAYADA NURSES, INC., <br><br> Defendant. | ORDER |

**THIS MATTER** is before the court in accordance with 28, United States Code, Section 636(c) and on defendant's Motion to Dismiss (#5) and plaintiffs' Motion to Amend (#7). It appearing that the parties have fully briefed the pending motions, the court enters the following findings, conclusions, and decision.

## FINDINGS AND CONCLUSIONS

### I.   Background

On August 1, 2006, defendant removed this action from the North Carolina General Court of Justice, Superior Court Division, for Lincoln County, based on diversity jurisdiction. 28 U.S.C. § 1332. In their original Complaint, plaintiffs contend that defendant breached its contract with decedent's parents when defendant failed to dispatch a nurse to their residence on or about February 8, 2004.

Plaintiffs allege that their decedent, Alexander Michael Buckwell, was a child who suffered from Broncho-pulmonary dysplasia as well as other pulmonary ailments resulting from premature birth. Complaint, at ¶ 3. Plaintiffs further allege that their decedent required

nursing care while he slept, including monitoring of his oxygen status, to insure that he was breathing properly. Id., at ¶ 4. Plaintiffs allege that their decedent was the beneficiary of a third-party contract between defendant and the decedent's parents which provided for provision of healthcare services 12 hours a day, everyday. Id., at ¶¶ 5 & 6. Plaintiffs further allege that on February 8, 2004, defendant failed to provide such nursing care services, id., at ¶ 7, and that their decedent suffered respiratory distress that morning and died. Id., at 8. Plaintiffs argue in their response that despite assurances from defendant that a nurse would be sent or that they would be called by 3 a.m., that neither event occurred and that the child died that morning after the mother was unable to stay awake to care for the child.

In the original Complaint, plaintiffs contend that defendant breached its contract with plaintiffs' parents and that their decedent, a third-party beneficiary of such contract, died and that his estate is entitled to recover damages for his wrongful death.

On August 22, 2006, defendant moved to dismiss in accordance with Rule 12(b)(6), Federal Rules of Civil Procedure, arguing that no cognizable claim was contained in the original Complaint. Defendant argues, as follows:

(1) to the extent plaintiffs are attempting to allege a claim for medical malpractice, plaintiffs have failed to comply with the certification requirements of Rule 9(j), North Carolina Rules of Civil Procedure; and

(2) if plaintiffs are in fact attempting to allege a breach of contract claim seeking damages in tort for wrongful death, plaintiffs have asserted a claim not recognized by North Carolina law.

On September 7, 2006, plaintiffs responded to defendant's motion and filed a Motion to Amend as well as a proposed Amended Complaint (#7-3). In the proposed Amended Complaint, plaintiffs seek leave to assert a claim for simple negligence in addition to the

original claim for breach of contract. Further, plaintiffs propose to allege that all the acts or failure to act of which they complain were done by employees of defendant and that defendant should be held responsible for such alleged wrongs based on a theory of *respondeat superior*. Proposed Am. Compl., at ¶ 12-13

## II. Applicable Standards

### A. Rule 12(b)(6) Standard

Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiffs' complaint could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001).

While the court accepts factual allegations in the complaint as true and considers the facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

The presence of a few conclusory legal terms does not insulate a

> complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on defendants' motions, the court has accepted as true the facts alleged by plaintiff in the complaint and will view them in a light most favorable to plaintiff.

**B.     Rule 15**

Plaintiffs have moved to amend their Complaint and defendant has objected within the time allowed. Rule 15(a), Federal Rules of Civil Procedure, provides for liberal amendment of pleadings unless the proposed amendment would be futile or undue prejudice would result.

> Rule 15(a) of the Federal Rules of Civil Procedure provides that when a party seeks leave to amend a complaint "leave shall be freely given when justice so requires." Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962), mandates a liberal reading of the rule's direction for "free" allowance: motions to amend are to be granted in the absence of a "declared reason" "such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , futility of amendment, etc." In Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980), we noted that under Foman a lack of prejudice would alone ordinarily warrant granting leave to amend and that mere delay absent any resulting prejudice or evidence of dilatoriness was not sufficient justification for denial.

Ward Electronics Service, Inc. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987).

## III. Discussion

### A. Introduction

Whether to dismiss the action or allow amendment comes down to the same fundamental question, which is whether plaintiffs' claim for their decedent's alleged wrongful death must be brought as a claim for medical malpractice. If the answer is "yes," then the proposed amendments would be unavailing and futile as a matter of law. If the answer is "no," then it would be appropriate to allow the proposed amendments and deny the Motion to Dismiss as moot.

### B. North Carolina Law Concerning Medical Malpractice

#### 1. "Persons" Include Corporations

Plaintiffs first argue that defendant, a corporation, is not a "person" under North Carolina's statutory definition of "health care provider." Plaintiffs' Brief, at 3. North Carolina law defines a "health care provider" as follows:

> the term "health care provider" means without limitation any person who pursuant to the provisions of Chapter 90 of the General Statutes is licensed, or is otherwise registered or certified to engage in the practice of or otherwise performs duties associated with any of the following: medicine, surgery, dentistry, pharmacy, optometry, midwifery, osteopathy, podiatry, chiropractic, radiology, nursing, physiotherapy, pathology, anesthesiology, anesthesia, laboratory analysis, rendering assistance to a physician, dental hygiene, psychiatry, psychology; <u>or a hospital or a nursing home</u>; or any other person who is legally responsible for the negligence of such person, hospital or nursing home; or any other person acting at the direction or under the supervision of any of the foregoing persons, hospital, or nursing home.

N.C.Gen.Stat. 90-21.11(emphasis added). Clearly, plaintiffs argument that the statute was only intended to include natural persons finds no support in the statute inasmuch as the statute specifies at least two entities that cannot be natural persons, i.e, a hospital or nursing home. Further, reported case law has long held that a corporation is a person.

> Corporations are generally considered "persons" in contemplation of law. The United States Supreme Court has stated: "[I]t leads nowhere to call a

corporation a fiction. If it is a fiction, it is a fiction created by law with intent that it should be acted on as if true. The corporation is a person . . . ."

Advance Publications, Inc. v. Elizabeth City, 53 N.C. App. 504 (1981)(*quoting* Klein v. Board of Tax Supervisors, 282 U.S. 19, 24 (1930)).

### 2. Healthcare Provider

Plaintiffs next argue that defendant is not a healthcare provider as defined by the statute inasmuch as it is more akin to an employment agency, and that the nurse who comes to the patient's home "is not operating under the direction of [defendant] or under their supervision." Plaintiff's Response, at 3.[1]

First, plaintiffs' argument is in complete contradiction to their own allegations. Plaintiffs have alleged that defendant "provides nursing services throughout the state," Col., at ¶ 2, and that defendant "entered into a contract to provide healthcare to Alexander Michael Buckwell . . . ." Id., at 5. Plaintiffs also annexed to their Complaint copies of the "Healthcare Certification and Plan," an "Addendum" to that plan, and a "Primary Caregiver Agreement Form." Those documents clearly provide that defendant would be the decedent's healthcare "Provider."

Second, plaintiff has alleged that "Defendant . . . is a corporation licensed to do business in the State of North Carolina and provides nursing services throughout the state." Compl., at ¶ 2. In an apparent attempt to re-characterize defendant in response to defendant's motion, plaintiffs' proposed Amended Complaint would alter such allegation to allege that defendant "arranges Nursing services so that nurses are sent to individual homes." Proposed Am. Compl., at ¶ 2. The North Carolina statute is clear, however, that

---

[1] The court considers this to be an argument in the alternative inasmuch as plaintiffs have stated in the proposed Amended Complaint that the actions of which they complain were done by "employees of [defendant] acting with the scope and authority of their employment . . . ."

> health care provider means <u>without</u> <u>limitation</u> any person who . . .is <u>licensed,</u> or is otherwise registered or certified to engage in the practice of or otherwise performs duties associated with . . . <u>nursing</u> . . . .

N.C.Gen.Stat. 90-21.11(emphasis added). The court finds that a corporation that allegedly provides in home nursing services to patients in North Carolina is a "health care provider" as defined by Chapter 90-21.11 of the North Carolina General Statutes.

### 3. Medical Malpractice Claim

The same statute that defines "health care provider" also defines what constitutes a medical malpractice action:

> As used in this Article, the term "medical malpractice action" means a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider.

<u>Id.</u>

A claim for medical malpractice is not cognizable through assertion of claims for simple negligence or breach of contract. Plaintiffs have alleged that their decedent "required monitoring of his oxygen status to insure that he was breathing properly," Compl., at ¶ 4, that defendant "entered into a contract to provide healthcare," <u>id.</u>, at ¶ 5, that "Defendant failed to provide nursing care as it contracted to provide," <u>id.</u>, at ¶ 7, and that as a result "the minor Plaintiff died." <u>Id.</u>, at ¶ 8. Without doubt, the services defendant allegedly provided or failed to provide would require specialized skill and knowledge which resides outside the realm of ordinary negligence identifiable by the ordinary lay person. The court need look no further than the "Healthcare Certification and Plan" and the "Addendum" thereto, which are exhibits to the Complaint, to find compelling evidence of the medical skill involved in the care of the decedent. Based on plaintiffs' allegations, the wrong alleged by plaintiffs would squarely fit North Carolina's statutory definition of "medical malpractice action," inasmuch as plaintiffs are attempting to bring a civil action for wrongful death arising out of the alleged

−7−

failure to furnish professional medical services by a health care provider.

### 4. Certification of Review By an Expert as to Breach of the Standard of Care

To bring a claim for medical malpractice in North Carolina, plaintiffs must allege: (1) the applicable standard of care; (2) the defendant's breach of that standard; and (3) that the breach caused the plaintiffs' injury. Frazier v. Angel Medical Center, 308 F.Supp.2d 671, 676 -78 (W.D.N.C. 2004). Plaintiffs must also allege that "the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness" as required by Rule 9(j),North Carolina Rules of Civil Procedure.[2] Bass v. Durham County Hosp. Corp., 358 N.C. 144 (2004). Rule 9(j) of the North Carolina rules provides that

> [a]ny complaint alleging medical malpractice by a health care provider . . . in failing to comply with the applicable standard of care . . . shall be dismissed unless:
> (1) The pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
> [or]
> (3) The pleading alleges facts establishing negligence under the existing common-law doctrine of *res ipsa loquitur*.

---

[2] Plaintiffs have not argued that the North Carolina Rules of Civil Procedure are inapplicable in federal court. In Grey-Swaby v. Pitt County Memorial Hosp., 2005 WL 3088513, *1, f.n.1 (E.D.N.C. 2005), the district court held in dicta "that the North Carolina Rules of Civil Procedure are not applicable to proceedings in this court," where plaintiff was faced with a similar motion to dismiss. As such argument was not raised, the court considers it waived. Further, the majority of cases reviewed by this court would apply the requirements of Rule 9(j) in federal court as a substantive rather than procedural requirement. See Frazier v. Angel Medical Center,supra; Estate of Williams-Moore v. Alliance One Receivables Management, Inc.,335 F.Supp.2d 636, *649 (M.D.N.C. 2004); Moore v. Pitt County Memorial Hosp., 139 F.Supp.2d 712, *713 (E.D.N.C. 2001). This court agrees with such line of decisions and finds Rule 9(j) applicable to medical malpractice claims that are filed in or removed to federal court.

N.C. Gen.Stat. § 1A-1, Rule 9. Plaintiffs have not alleged that the health care or lack of care provided their decedent was reviewed by an expert who is willing to testify that the care or lack thereof did not comply with the applicable standard of care. Further, plaintiffs have made no allegation or argument for the application of the doctrine of *res ipsa loquitur*.

### 5. Dismissal of Plaintiffs' Complaint or Claim

North Carolina law appears to be clear that a court must dismiss a claim for medical malpractice that is not supported by a certification. N.C.R.Civ.P. 9(j). In this case, however, plaintiffs have attempted not to assert a claim for medical malpractice, but have instead attempted to assert a claim for breach of contract in the Complaint. From the facts alleged in the complaint it appears that if the plaintiffs have a cause of action it is a claim for damages for wrongful death caused by medical malpractice of the defendant by the acts or failure to act of its agents and employees The court will dismiss the claim for breach of contract under Rule 12(b)(6), but in accordance with Rule 15(a) allow plaintiffs 30 days within which to file with the court a properly certified medical malpractice claim.

In reaching this decision, the court has attempted to weigh the prejudice. While defendant (and the court) has been put to the task of disposing of an improperly asserted claim, it is clear from the pleadings that defendant has been aware since service of the Complaint that plaintiffs claim was for medical malpractice. On the other hand, if this court were to dismiss this Complaint with prejudice, is quite likely that plaintiffs' medical malpractice claim would be forever barred. If the allegations of the Complaint are true, then dismissal with prejudice would be a profound injustice. Clearly, the tactical errors of counsel should not be ascribed to plaintiffs. Further, it cannot be argued that defendant was unaware of the true nature of plaintiffs' claim if they were allowed to amend and assert a claim for

medical malpractice that related back to the original filing.

Defendant has, however, incurred additional and unnecessary costs in seeking the dismissal of a claim that is clearly barred by well settled North Carolina law. In the event plaintiffs elect to amend the Complaint as allowed, the court will instruct defendant to prepare a fee and cost petition as to its prosecution of the Motion to Dismiss for presentation to the court at the conclusion of trial; however, the parties are granted leave to resolve the issue of costs and fees between themselves before presentation of any petition to the court.

## ORDER

**IT IS, THEREFORE, ORDERED** that

(1) defendant's Motion to Dismiss (#5) is **ALLOWED,** and the plaintiffs' claim for Breach of Contract is **DISMISSED** without prejudice in accordance with Rule 12(b)(6);

(2) plaintiffs' Motion to Amend (#7) is **DENIED** inasmuch as the proposed amendments do not comport with well settled North Carolina law and would be futile;

(3) plaintiffs are **GRANTED LEAVE** to file and serve within 30 days an amended complaint containing a properly certified claim for medical malpractice. If no such amended complaint is filed within 30 days, this action shall be terminated without further Order of the court; and

(4)    defendant is **GRANTED LEAVE** to file with the court at the conclusion of trial of this matter a fee and cost petition as to its prosecution of the Motion to Dismiss.

Signed: October 18, 2006

Dennis L. Howell
United States Magistrate Judge